The second case of the day, which is 23-2204, Wand v. Kramer. Good morning, Mr. Heckman. Good morning, Your Honor. May it please the Court, Michael Heckman for Plaintiff Appellant Armin Wand. Mr. Wand's blindness and stutter, limited education and lack of legal experience, incarceration, and the stage and complexity of his claims, all combined to profoundly hinder him from presenting his medical deliberate indifference and negligence claims to a jury. The district court's refusal to attempt to recruit counsel for Mr. Wand in light of these obstacles was an abuse of discretion twice over. Now, if the district court had granted the request for a neutral expert, would that have been sufficient here, or do you think the denial of appointment of counsel still would have been an abuse of discretion? It still would have been an abuse of discretion. As we discussed in the briefs, a medical expert would have helped tremendously, but Mr. Wand still faced the difficulty of presenting his case to the jury. With his blindness and stutter, lack of education, inability to prepare his witnesses, he was simply incompetent to do so, with or without the expert. But the expert certainly would have helped. That's part of why the denial of counsel was so significant, because the court also denied the appointment of the neutral expert. Without any expert, Mr. Wand had no real shot to convince the jury that his uncontested symptoms, his 10 out of 10 pain, his inability to lie down, his vomiting 23 times in a night, his crying out in pain when Nurse Kramer pressed on his abdomen, he had no real chance to convince the jury that those indicated appendicitis should have indicated appendicitis to a trained medical professional. You're talking about as of the 13th? As of the 13th, that's right, during that first visit. Assuming consistent with his trial testimony, he did not indicate at that visit that he had lower right quadrant pain. As Kramer now concedes, if the jury had believed that he had indicated lower right side pain, that would have been the ballgame. He would have won on that point. But even without that, certainly, he attested to several symptoms, both in his verified complaint, his deposition, and a trial in his testimony, several symptoms that were very serious, and a medical expert could have testified that they would have put her on notice. How do we know that? Obviously, we haven't retained an expert here, and so the best place to look is other cases where experts have testified similarly, Rivera v. Kettle Moraine Correctional Institution is one case where a litigant had similar symptoms, somewhat different mix, but similar symptoms, and submitted an expert report where the expert said those symptoms would have put a nurse on notice, and ignoring them was still really different. Mr. Huckman, can I go back to one aspect of Judge Hamilton's comment and question? It seems to me that Mr. Wan's trial testimony, especially his acknowledgment on cross-examination about the 14th, that had major consequences, in my view, for his deliberate indifference claim. I don't see how, against the backdrop of that admission, it's even possible to win that claim, but he still could have prevailed on his negligence claim. Do you agree or disagree with me on the deliberate indifference claim? I just don't see what a lawyer could have done against the backdrop of that admission. I disagree. I agree that he still could have won his negligence claim, but I don't disagree that his deliberate indifference claim was due. How? Because given the admission, my words, not yours, he and Nurse Kramer basically agreed on the fact pattern. So I think one place to look is, following that testimony, Nurse Kramer moved for a directed judgment and the court denied it, saying it still could have been reasonable for the jury to find for Mr. Wan on his deliberate indifference claim, given the other symptoms. And of course, had counsel been present, the whole thing could have gone much differently. Can you articulate that for me, though? How it could have gone differently? How can a jury find deliberate indifference on that? I mean, you still have the negligence claim, and that's a serious question. I'll grant you that, but how in the world can he win that deliberate indifference claim? With that testimony? So the standard for deliberate indifference is that Mr. Wan had an objectively serious medical condition. That Kramer was deliberately indifferent to. Simple. So all Kramer needed was to be on notice of his condition and ignore it. Mr. Wan had several other symptoms. Ten out of ten pain. Physically, she inspected his abdomen area. And he cried out in pain when she did so. He said he couldn't lie down. He said he vomited 23 times over the course of, I think, an eight-hour span. Okay, now go to the point you just made and then ignored it. But she didn't ignore any of that. She didn't report Mr. Wan's serious condition to a doctor, which is the step that she would have taken had she, you know, the step she should have taken, the step she took the next day on the 14th. Had counsel been present, of course, the whole thing could have looked very different. Because Mr. Wan had said in many sworn statements and other filings before the court prior to trial, that he did tell Kramer of his lower right side pain on the 13th, it's reasonably likely that counsel would have been able to elicit that testimony from him at trial. Counsel could have helped Mr. Wan prepare better for the rigors of cross-examination. If you look at the transcript, Mr. Wan seemed to struggle in response to the question. I looked at the transcript and I don't see any sign of confusion. Maybe you can direct me to something. So I think if you look right after this exchange, Mr. Wan pauses the cross-examination to ask the court for water, which I think could indicate that he was feeling overwhelmed. If you look above where this line of questions started, there had been discussion of what Mr. Wan had put in his medical request form. And he acknowledges that in that form, he didn't mention his lower right side pain. So he may have thought they were still talking about that. Counsel went over that point because it was so important two or three times. And as I say, I don't see signs of ambiguity or confusion. Well, certainly we acknowledge that it likely did not play well with the jury. As the district court said and as Judge Scudder said, this made that path to victory significantly more difficult. As for why Mr. Wan testified as he did, we don't have a firm answer. But I don't think this court can conclude that he just lied. He had under oath previously said twice that he had told Nurse Kramer this. I don't know whether he was telling the truth or lying, but he was flatly contradicting himself on the key fact. And if we were to send this back for another trial with the assistance of counsel, he'd have a heck of a credibility problem on that critical point, don't you think? Well, if he testified consistent with his sworn statements beforehand, he would have no issue. And there's reason to think that counsel would have. He would have. He would now be impeached with his prior testimony from this trial, right? There's, you know, at least a reasonable likelihood that counsel would be able to clear up any confusion by asking him directly. What did you mean? What did you tell Nurse Kramer on the 13th? Is it in fact the case that you didn't tell her about the symptom, assuming that Mr. Kramer didn't flatly contradict himself one way or the other? I mean, he's in a very tough situation. He was in a very tough situation during this trial. He was managing for the very first time a whole trial with, you know, no legal education, not even a high school diploma. He was blind, has a severe stutter. He was in way over his head. Go ahead. Go ahead and finish your talk. I think there's at least a reasonable likelihood that the struggles he showed during cross-examination are related to his overall inability to manage this trial. And I will just remind the court that, again, this was just one path to victory. He had a second path to victory. His remaining symptoms that an expert, you know, easily could have testified satisfied the standard at least for negligence and likely for deliberate indifference. One of the points that you really emphasize in your brief is that he was relying before trial all the way through on jailhouse lawyers to help him. And I'm not – I mean, I think he might be descriptively accurate, but I don't know that it was all that limiting to him. And here's why I say this, and you can tell me I'm right or wrong, is that he seems to have adequately, if not successfully, deposed on his own, pro se, Kramer and Johnson. So, if his speech impediment and his blindness were really limiting to him, he managed to, you know, he overcame that okay for purposes of that, you know, deposition. Because he's not hopelessly confused, he's not rambling on, it's not incoherent, there's nothing like that. And the question from the observation is, couldn't the district court have considered that among the remainder of everything else in deciding, all right, you know, I might have to help him a little bit. He's got a speech impediment at trial, but I'm not going to expend the scarce resource of recruited counsel in this circumstance. I believe that those depositions came after the district court's denial, and so they were not in front of the court. Forget that. Set that aside. I mean, he did okay in the depositions is my main point. It's not incoherent. It's not incoherent. It's not great. They were, you know, there were questions left unasked. They were not particularly thorough or effective depositions, but he was able to do something. Certainly. And that's. Sorry. Go ahead, your honor. You finish your thought. The other thing I was going to say, Judge Scudder, is that the district court, if it was going to say, you know, relying on a couple of things I've seen from Mr. Wand, he is competent. It needed to disentangle that from the jailhouse lawyer's assistance. This court has said that over and over. It's been very clear that the court has to explain its reasoning, and in particular has to explain when it's looking at competence, that it is looking specifically at the litigants competence and not the competence of his jailhouse lawyers. That's cases like Henderson, DeWitt, and Walker. I would like to follow up on Judge Scudder's question to you, please, because although the difficulties Wand experienced during the trial indicate for me at any rate a need for appointed counsel, should we consider that in assessing whether the district court abused its discretion in denying the request? In other words, okay, do we have to focus only on what was known to the court at the time of its decision rather than on what took place later at the trial itself? For purposes of the abuse analysis, you look at what was in front of the court at the time, obviously prejudice, you look at what happened during trial, but everything that happened during trial was predictable from the time of the court's order. The court knew that Mr. Wand was blind, had a stutter, had no education, was incarcerated, had all of these issues. The court could have anticipated the difficulties that he would face at trial. I mean, would it be your view that, for instance, a deposition with just a few people there is a far less stressful situation than a full-blown trial? Absolutely. In fact, in the trial transcript, the district court points out that when Mr. Wand got nervous, his stutter got worse. Certainly the full trial experience in front of a jury made Mr. Wand much more nervous than a deposition would have. Thank you, Your Honor. I'll reserve the rest of my time. Thank you very much, Mr. Heckman. Hello, Ms. Schmelzer. Good morning, and may it please the court. I'm Jody Schmelzer, an Assistant Attorney General for the State of Wisconsin Department of Justice, and I represent the defendant, Apolli, in this case, Nurse Becky Kramer. In my argument, I'm first going to address how the district court did not abuse its discretion when it denied Mr. Wand his final request for recruitment of counsel. And then I will address how the denial of recruitment of counsel did not prejudice Mr. Wand, given the jury's verdict and the testimony at trial. Of course, we start here with the premise that there is no constitutional or statutory right to the appointment of counsel in federal civil litigation. However, indigent civil litigants like Mr. Wand may ask the district court to request an attorney to represent him pro bono. This puts district courts in a difficult position of having to determine, of the numerous people lacking counsel, who needs it the most. For example, in the Western District of Wisconsin, there are approximately 300 new cases a year brought by pro se litigants, most of them inmates, and only about 25 attorneys willing to take voluntary appointments, most of which won't even take one of those cases a year. The court just doesn't have enough attorneys to go around, so these requests are carefully scrutinized and subject to the abuse of discretion standard. Here's my problem. Although the district court considered Wand's physical limitations on their own, did the court ever consider the combination of his physical limitations, his educational attainment, and the difficulty of the case in combination? And if your answer is going to be yes, I would appreciate your telling me where I could find that. And if your answer is going to be no, isn't that required in determining whether appointment of counsel should be granted? I think because Mr. Wand here had repeatedly requested the appointment of counsel, the district court has adequately addressed all of his professed impediments here. Where will I find that? That's what I want to know. The district court, I think, thoroughly addressed in his second and third motions for recruitment of counsel his limited education, his legal experience, as well as the complexity of the case and the fact that it involves medical issues. There it noted that nearly all pro se inmates are untrained in the law. Many have claims concerning medical issues, and there's no categorical rule that inmates with medical claims are entitled to counsel. I don't see where the court ever really grappled with the problem as a whole, not just whether his physical challenges were debilitating or his educational level problematic, but whether given those challenges, he would not be able to conduct the trial, particularly in the light of the need for expert testimony. And I think here, Your Honor, the claims that he made in his earlier request for appointment of counsel were adequately addressed, and that's not going to change throughout the rest of his request. And the court's finding that he advocated well for himself and that he was capable of litigating the case without an attorney, he was familiar and did state he had read the applicable federal rules. He was able to track his filings and deadlines. And he filed, in this case, I think it was 28 pretrial motions before summary judgment was decided. So the court made those findings in its earlier decisions on his recruitment of counsel and then focused more specifically, I think, on the vision and speech impairments that he raised later that it hadn't addressed before. And the fact that he had stated that he relied on jailhouse lawyers that he hadn't stated before. So it focused on those newer, I guess, impairments that Mr. Wand had raised in its final decision and its decision on the motion to reconsider denial of recruitment of counsel in that final request. Ms. Schmelzer, can I ask you an aspect of, I think, at least what I hear is embedded in Judge Roedner's question? There's a point in the litigation when mediation or settlement discussions were being pursued and there was a lawyer appointed at that particular stage and one of the observations, correct me if I'm mistaken, that the district judge made was that the lawyer could not only help with mediation, but the lawyer could help with expert issues that may inform the pricing or the value of the case or whatever the words were that were used there. And then when we come to the request to recruit counsel for trial, all of a sudden the consideration of a need for expert testimony drops out of the district court's analysis. And if you were to ask me, is it more important to have an expert for mediation purposes or for trial purposes on these claims? I would tell you trial eight days a week. In general, I would say yes. But here we have, we're looking at the exercise of discretion here. The court made an initial determination when it granted his request for appointment of counsel, but it did so noting that he still advocated well for himself, that he was able to… Maybe you'll tell me too narrowly, but I'm focused on the expert. And you heard the colloquy that I had with Mr. Heckman about the admission that was made on cross-examination. I think that's a major problem definitely for a future trial, as Judge Hamilton's pointing out. I think it's a major problem in this case on the deliberate indifference claim. But the absence of an expert to identify the standard of care that Nurse Kramer should have been operating under on the 13th is a real… That's a big issue for him on succeeding on that negligence claim at trial here. Am I wrong about that? I think you're partially wrong, Your Honor, with all due respect. Here we have a case where Nurse Kramer, it was stipulated, it was admitted that if he would have said, I have lower right quadrant pain in my abdomen and showing some of those signs that he showed on the 14th, she would have sent him out or at the very least called the healthcare provider and he would have been at the hospital. But his negligence claim is that a nurse presented with what he presented on the 13th, not on the 14th, on the 13th, what he actually presented with, would have detected that he may have an emerging burst appendix or an appendicitis condition. And I think if we accept that, we're going to then have a categorical rule that any time a pro se litigant brings a state law negligence claim, we're going to have to appoint counsel. And this court has repeatedly rejected that kind of categorical rule. I'm not sure that the slope is that slippery. I don't think so. You know, Ms. Schmelzer, I hear something that worried me. Okay. Asserting that one could try to obtain expert testimony by cross-examining nurse Kramer and that the court would treat her as an adverse witness. Did the court ever consider whether one's limited education, his legal blindness, his speech impairment would limit the viability of that option? I mean, wouldn't that be a difficult means of obtaining supportive testimony even for an experienced attorney? This court has said that just because, and this was in Johnson v. Doty, a case cited in my brief, that just because a pro se inmate in a medical claim is denied an expert, that is not a reason to find an abusive discretion here. That just because counsel could have added opportunities to improve the case doesn't mean the case was overly complex for the inmate to try himself. And we have to look here at what he actually was able to accomplish at trial. He asked and successfully deposed the two defendants in this case. He also cross-examined and impeached nurse Kramer with part of that deposition testimony. This court and this panel has already found that his speech impediment and his vision impairment did not make the case overly complex for him to try his Eighth Amendment claim against Officer Johnson. I'm sorry, say that again? Yes, in the court's first decision in this case, it affirmed the denial of recruitment of counsel for his Eighth Amendment claim against Officer Johnson. He had those same vision impairments and the same speech impediment in the trial with Officer Johnson. It was tried together. In fact, the jury instruction for both Officer Johnson and Nurse Kramer on that Eighth Amendment claim was the same. So we really have to look beyond that, I think, and look at how did this prejudice Mr. Wand here. And I think to say that, A, an expert could have been retained to support his claim that reports of stomach pain, 10 out of 10 pain, and vomiting all night was violated the standard care to not then consult the health care provider. I think that's a stretch. That's speculation. We have no reasonable likelihood that that could have been made. I don't have any idea whether it is or isn't. That's not difficult. I don't know. I mean, you can say it. I can say it, but what difference does it make? We're not medically trained. You're exactly right, Your Honor. There is a reasonable likelihood that counsel would have changed the outcome of this trial. We don't know that an expert could have even been retained to say that. There's no medical evidence. There's no treatises. There's no nothing here. What's your recollection of what Nurse Kramer testified to at trial regarding the standard of care? We know that the nursing protocols for the Wisconsin Department of Corrections Bureau of Health Services were introduced, that her nursing notes followed that protocol, and that there was no dispute that she did not deter from that protocol. That's this business, that's like this chart thing? That's correct, Your Honor. That's correct. And we also know that from the testimony of Jolinda Waterman, who was the health services manager there, that her protocols are, that's what our nursing staffs are instructed to follow. So she did follow that. We also know, and like I stated earlier, she conceded that had she been notified that he was having lower right quadrant pain, or even that his abdomen was distended, or that there was rebound pain, those symptoms would have required her, under the standards of care, to consult with a health care provider and probably go to the hospital after that. Now, the district court based its denial of appointed counsel in part on its conclusion that expert testimony wasn't necessarily needed because recruited counsel declined to pursue an expert further. But the court recruited counsel only for purposes of mediation. So, do we know whether the recruited counsel for mediation ever made any determination as to the need for expert testimony if the case proceeded to trial? And if so, I would appreciate knowing where I would find that in the record. That is not in the record. The only indication we have in the record of what recruited counsel did was a statement from the DOJ attorney during one of the pretrial conferences that Mr. Wan did in fact have qualified, experienced attorneys appointed to help him in mediation. They were not able to locate an expert and they got off the case. So that was the only thing that we say. There's nothing from the court in its decision or anything from Attorney Eisenberg in the record as to what his efforts were. But we know he was appointed for purposes of mediation and obligation. But then how can the district court base its denial of appointed counsel in part on some conclusion that there was no expert testimony needed because recruited counsel declined to pursue an expert? I'm a little concerned about that. I see my time is up, Your Honor. If I could just finish and answer your question. Of course. I think the district court's decision was far more expansive than that. It said, it reconsidered its earlier decision that expert testimony was needed in the case. It wasn't based on the fact that earlier appointed counsel asked to be withdrawn from the case. He looked at whether or not it was actually needed because was this in fact a credibility determination and that the most crucial evidence was what he told Nurse Kramer on February 13th and that Wan could cross-examine her about that interaction and he did. The court also noted that Mr. Wan may challenge an illicit expert testimony from Kramer and we know that Mr. Wan attempted to do that. He subpoenaed two outside nurses along and he also had Nurse Kramer and this court tells us that that's not improper for the district court to rely on in Winger versus Pierce. But they refused to testify. They didn't respond to him. Right. And again, we have whether or not that actually prejudiced Mr. Wan here. It's complete speculation to say an expert would have supported him in this case or that it was reasonably likely that an expert could have been retained and supported him given his testimony in this case. Judge Robner, can I ask one follow-up question? You may ask a hundred. So, that point you just made Ms. Schmelzer, are you saying that on appeal then? Because it didn't happen at trial, right? On appeal, is Mr. Heckman or whoever is sitting in that chair in the next appeal, okay, is he obligated to make the standard of care proffer on appeal? Because if there's no expert on standard of care at the trial level, you're always going to say what you just said and understandably so. Speculation. Okay, so then the question is, well, when is the standard of care considered for purposes of a prejudice analysis? And just to say, it's not just me saying that, this court said that in Johnson v. Doty. But I think there has to be something in the record to bring this out of the realm of speculation and into what's reasonably likely to make a difference in the outcome of this case. That's the standard for prejudice here. And if there's nothing either in the trial court, there's no medical information submitted throughout the record that the signs of 10 out of 10 pain and vomiting and amnesia should have alerted someone to appendicitis. So my final question is this. Mr. Heckman, I think, is going to say, that's my point. That's the point. That's where a lawyer comes in. And we don't have a categorical rule that lawyers have to be appointed to show that evidence. But I think the inmates bring that evidence in all the time in a record. And we see it all the time in summary judgment. And I'd also note that the Rivera case, the inmate did present with lower right quadrant or holding his right side of his abdomen and did note that it was his appendix to the nurse in that case, making it distinguishable here. And we also could have case law that says, and I agree with Mr. Juan, that we could have case law that says this should have alerted someone that he should have been sent out to the institution or a patient where it's 10 out of 10 pain and he's been vomiting all night and it's nausea. And that's it. If there's a case that says that, I think that meets that reasonable likelihood prejudice standard. But we have nothing like that in this case. Can I just quickly follow up? The recruited counsel for mediation, was that Mr. Eisenberg? It was, correct. Was it Stephen? Stephen Eisenberg, correct, Your Honor. I guess there are two Eisenbergs in Madison. Thank you. Right. Okay, thank you. Thank you, Your Honors. Thank you. Okay. Mr. Heckman. No, no, no. Can you hold on for a second? Please give Mr. Heckman the full three minutes that he requested. Okay. Thank you, Your Honor. Judge Scudder, as you said, that is the point. Mr. Wand did not have counsel to put in this evidence. Mr. Wand could not do so himself. He was left without an expert to testify on his behalf. And there is reason to think that would have made a difference. Take Rivera, which is a fairly similar context. My friend noted that the plaintiff in Rivera did have, did say it was near his appendix. Mr. Wand, you know, in his verified complaint, did say that. But also, even at trial, there was discussion that he had told Nurse Kramer that something was wrong internally, that it wasn't a stomach flu or something to that effect. And even with Mr. Wand's model testimony that that was so damaging to his trial, the jury still deliberated for two and a half hours in a three-day trial. It took it very seriously. This case looked close. There is reason to think that an expert testifying on his behalf could have tipped the scales. There is reason to think that counsel would have been able to get an expert where Mr. Wand failed. Mr. Wand sent 21 letters out to doctors seeking an expert to testify on his behalf. Twenty ignored him. One responded, and the prison screened it. So he never received that letter. Further harm from his incarceration. Counsel would likely have had relationships with medical experts, would at least have been able to get someone on the phone, and would have been able to get someone to come and testify to the standard of care. Whether it would have gone, you know, as far as I would like here, as we've discussed, it's hard to know, but certainly, there would have been something an expert could have said that likely would have been helpful in tipping the scales of this case the jury took so seriously. Also note that the district court continued to think that there may be some reason to have an expert. In its footnote, it noted it would provide funding for an expert, or it would consider providing funding for an expert if Mr. Wand could find one. Seems to be taking it seriously there. A few other notes. To confirm, the Kramer and Johnson depositions did occur after the denial, so those were not part of the court's consideration. On this court's prior decision in the appeal before this one, the Johnson claim, this court said it was doomed, so it didn't, you know, Mr. Wand couldn't have succeeded regardless of his competency there. My friend referenced the testimony of Jo Linda Waterman. That is the testimony that veered into expert, that the district court chastised opposing counsel for veering into expert testimony elicited from Ms. Waterman. Had Wand been represented by counsel, counsel would have objected at the proper time. Mr. Wand tried to object later and was told by the district court that he had done so too late, that the objection had needed to be contemporaneous. Further evidence of Mr. Wand's incompetence in managing that trial. As for Mr. Eisenberg, whether he investigated experts, we have Mr. Wand's declaration saying, previous counsel appointed my case, neither sought an expert to assist me nor aided me in any way. That is evidence on the record. Mr. Wand's declaration, R237. The question is who needs counsel the most? Mr. Wand certainly needed counsel to assist him in winning this case. We ask this court to reverse the district court's denial of counsel, remand for the recruitment of counsel and a new trial. Thank you. Mr. Schmeltzer, while we thank you, thank you so much for taking the appointment and for doing such a terrific job for your client. And I absolutely as well want to thank Ms. Schmeltzer who did a terrific job for her client as well. You're both in the finest traditions of what we hope for in lawyers. So thank you to both. And the case has been taken under advisement. And we're going to take a 10-minute break. Okay? Thank you.